Abdela TUM, et al., Plaintiffs,
Appellants/Cross–
Appellees,

v.

BARBER FOODS, INC., d/b/a BAR-
BER FOODS, Defendant, Ap-
pellee/Cross–Appellant.

Nos. 02–1679, 02–1739.

United States Court of Appeals,
First Circuit.

Heard Jan. 10, 2003.

Decided June 3, 2003.

Lori B. Kisch, with whom Timothy B. Fleming, Charles R. Dixon, Gordon, Silberman, Wiggins & Childs, P.C., and William C. Nugent were on brief, for appellants.

Graydon G. Stevens, with whom Kelly, Remmel & Zimmerman, were on brief, for appellee.

Before BOUDIN, Chief Judge, TORRUELLA and LYNCH, Circuit Judges.

TORRUELLA, Circuit Judge.

Plaintiff–Appellants are a group of hourly wage employees ("Employees") who brought suit against their employer, Barber Foods, for alleged violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 216(b). Employees sought compensation for alleged unrecorded and uncompensated work performed by them for Barber Foods.

The district court granted partial summary judgment for defendants. A trial was held on the issue of whether the time spent donning and doffing required clothing constituted "work" and whether such time was de minimis. The jury found for the defendant. Employees appeal from the district court decision and challenge two of the district court's jury instructions. Barber Foods cross-appeals, arguing that

the district court erred in ruling that the donning and doffing of required clothing and equipment is an integral part of the Employees' work for Barber Foods and is not excluded from compensation under the Portal–to–Portal Act as preliminary or postliminary activity. After extensive review, we affirm.

## I. Background

Located in Portland, Maine, Barber Foods is a secondary processor of poultry-based products. It purchases boneless chicken breast in bulk and processes that raw material into finished products such as stuffed entrees, chicken fingers, and nuggets. Barber Foods has two shifts, each with six production lines, consisting of three "specialty" lines and three "pack-out" lines. The product is assembled on the specialty lines, and then, after passing through large spiral freezers, the product is pouched, packed, and palletized on the pack-out lines.

The production lines are staffed primarily by rotating associates, employees who generally rotate to different positions on the lines every two hours. In addition to rotating associates, Barber Foods employs set-up operators whose primary duty is to ensure that various machines on the lines are operating properly, meat room associates who work where the raw product is blended with ingredients, shipping and receiving associates, maintenance employees, and sanitation employees.

All associates are expected to be on the production floor ready to work when their shift begins. They are paid from the time they actually punch in to a computerized time-keeping system from time clocks located at the entrances to the production floor.

## A. Equipment

Rotating associates are required to wear lab coats, hairnets, earplugs, and safety glasses. The lab coats, hairnets, and earplugs must be on before they can punch in and until they punch out. Safety glasses and any items that they choose but are not required to wear, such as gloves, aprons, and sleeve covers, can be donned after punching in and doffed before punching out.

Before they punch in, set-up operators are required to wear lab coats, hairnets, earplugs, safety glasses, steel-toed boots, bump hats and back belts, and are required to carry lock-out/tag-out equipment, which they put in their lab coat pocket. Any other items they choose to wear may be donned after punching in.

Meatroom associates are required to wear lab coats, hairnets, earplugs, safety glasses, steel-toed boots, back belts, aprons, and vinyl gloves. Many also choose to wear sleeve covers. All items must be on before punch in, except the apron, gloves, and sleeve covers, which can be donned after punching in and doffed before punching out.

Shipping and receiving associates are required to wear steel-toed boots, hard hats, and back belts. They generally don these items before punching in and doff them after punching out. Their time clock is located on the production floor, so they must also don and doff lab coats, hairnets, and earplugs in order to enter the production floor to punch in and out.

Employees obtain lab coats and cotton glove liners from the hallway between the entranceway and the equipment cage. The lab coats are on hanger racks and the glove liners are in tubs. Hairnets, earplugs, vinyl gloves, sleeve covers, and aprons are dispensed from the window of the equipment cage. Vinyl gloves, sleeve

covers, and aprons are also available from tubs on the production floor.

Bump hats, back belts, safety glasses, steel-toed boots, and reusable earplugs are dispensed once and then replaced as needed. Items retained by associates may be stored in their locker or taken home. Lab coats and gloves are laundered and reused; on their way out of the plant, associates drop these items in laundry bins located at several points along the hallway from the production floor exits to the plant exits. Vinyl gloves, sleeve covers, and aprons are disposed of in trash bins located on the production floor and along the hallways from the production floor exits to the plant exits.

Employees may have to wait to obtain and dispense with clothing and equipment. At busier times, there may be lines at the coat racks, glove liner bins, and cage window. There may also be a line at the time clocks.

### B. Time Keeping

Barber Foods uses a computerized timekeeping system. The system downloads clock punches into the payroll software. Time clocks are located at the entrances and exits to the production floor and at various other locations in the facility. Each employee has a swipe card with a bar code, which she swipes through the time clock. Rotating associates, set-up operators, and meatroom employees generally punch in at a clock in the area where they will be working and punch out on the clocks located next to the two primary exits. Maintenance employees punch in on a time clock in the maintenance room. Shipping-and-receiving employees punch in and out on the plant office clock located by the shipping-and-receiving office. Sanitation associates punch in on the cafeteria clock and punch out at the plant office clock.

Employees get paid from the moment they punch in. In an attempt to stagger check in times, Barber Foods allows Employees twelve minutes of "swing time," meaning that Employees can punch in up to six minutes early and get paid for that additional time or punch in up to six minutes late and not be charged with an attendance violation.

### C. History of Dispute

Seven current employees and thirty-seven former employees brought suit in district court claiming that Barber Foods violated the FLSA by forcing its hourly employees to work "off the clock" by not paying Employees for the time they obtain, donn, and doff their gear. Although the district court granted summary judgment for the defendants as to most counts, the court denied summary judgment as to the claim involving the donning and doffing of required clothing and equipment. The court found that the donning and doffing of clothing and equipment required by Barber Foods or by government regulation is an integral part of Plaintiffs' employment. This finding removed the donning and doffing of required gear from the Portal–to–Portal Act and its exclusion of compensability for preliminary or postliminary activity. 29 C.F.R. § 790.8. A trial was held on the issue of whether the time spent donning and doffing required clothing was de minimus and thus did not constitute work under the FLSA.

The jury found that the combined donning and doffing times are 1 minute for rotating associates, 2 minutes 16 seconds for set-up operators, 1 minute 53 seconds for meatroom associates, 2 minutes 8 seconds for shipping and receiving associates, and no time for maintenance and sanitation workers because they are not required to don clothing before punching in or to

doff clothing after punching out. The jury found that each of these donning and doffing times is de minimis, making the donning and doffing time non-compensable. Employees do not challenge the jury's findings.

Employees appeal the following findings in the partial summary judgment decision: (1) that the time employees must necessarily spend walking and waiting in connection with obtaining, donning, doffing, and disposing of the sanitary and protective gear required by Barber Foods and/or federal regulation is not compensable; (2) that the time spent donning and doffing clothing, equipment, and gear which is not expressly required by Barber Foods is non-compensable. In addition, Employees challenge two district court jury instructions.[1]

## II.  Standard of Review

We review summary judgment decisions de novo. *Kauch v. Dep't for Children, Youth and Their Families*, 321 F.3d 1, 3–4 (1st. Cir.2003). Construing the facts in the light most favorable to the nonmoving party, our role is to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III.  Discussion

■   The FLSA requires an employer to record, credit, and compensate employees for all of the time which the employer requires or permits employees to work, 29 U.S.C. § 201, *et seq.*, commonly defined as "physical or mental exertion (whether burdensome or not) controlled or required by

the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944).

■   However, even when an activity is properly classified as "work," the Portal-to-Portal Act, 29 U.S.C. § 254, exempts from compensation activities which are preliminary or postliminary to an employee's principal activity or activities unless they are an "integral and indispensable part of the principal activities for which covered work[ers] are employed and not specifically excluded by section 4(a)(1) [of the Portal-to-Portal Act]." *Lindow v. United States*, 738 F.2d 1057, 1060 (9th Cir.1984) (citation omitted). In addition, some activities may qualify as "work" and fall outside of the Portal-to-Portal Act, but still not require compensation because the activities require such little time that they are adjudged de minimis. *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 401 (5th Cir.1976).

### A.  Walking Time

■   Employees argue that the district court improperly excluded from compensable time the periods Employees walk from one area where they obtain an initial piece of clothing or equipment (required by Barber Foods and/or USDA regulations) to another area where they obtain additional items, the period they spend walking from getting their garb to the time clocks, and the time they spend disposing of clothing and equipment after they punch out.

1. In their Statement of Issues, Employees contend that they appeal from the district court's finding that Barber Foods is entitled to summary judgment on the issue of whether time spent by maintenance and shipping and receiving employees is de minimis. However,

they have waived their right to appeal by failing to make an attempt at developed argumentation. *Twomey v. Delta Airlines Pilots Pension Plan,*328 F.3d 27, 32 n. 4 (1st Cir. 2003).

Employees contend that the Portal–to–Portal Act excludes only that walking which occurs before an employee commences her principal activity or activities. Because the district court ruled that the donning of clothing required by Barber Foods or government regulation is an integral part of the Employees' principal activities, their workday commences as soon as they begin to don the required clothing. Thus, Employees submit, any walking which occurs after the commencement of donning is compensable.

We find that the district court properly excluded the contested walking time. The Code of Federal Regulations ("Code") states that Congress intended the term "principal activities" to be broad. 29 C.F.R. § 790.8 (2002). However, the Code regulations state that just because the changing of clothes may in "certain situations be so directly related to the specific work the employee is employed to perform that it would be regarded as an integral part of the employee's 'principal activity[,]' [t]his does not necessarily mean, however, that travel between the washroom or clothes-changing place and the actual place of performance of the specific work the employee is employed to perform, would be excluded from the type of travel to which section 4(a) [Portal–to–Portal Act] refers." 29 C.F.R. § 790.7(g) n. 49 (citing colloquy between Senators Cooper and McGrath, 93 Cong. Rec. 2297–2298) (internal citation omitted).

Even when we assume, for the sake of argument, that the donning and doffing is compensable work, we find that the walking time at issue falls within the Portal–to–Portal Act. As described in 29 C.F.R. § 790.7(g) n. 49, walking time is not automatically excluded from the purview of the Portal–to–Portal Act by virtue of following compensable doffing. By stretching the traditional understanding of a primary activity to cover donning and doffing in very limited circumstances, Congress was not creating an avenue to circumvent the Portal–to–Portal Act's exemption of preliminary or postliminary activities. In the case before us, Employees concede that the walk to the first place where gear is gathered is exempted by the Portal–to–Portal Act. See 29 C.F.R. § 790.7. Following this logic, if Barber Foods were to dispense all of the gear from one point, then it could eliminate Employees claim for walk time between dispensing areas. It would be nonsensical for us to conclude that the compensability of walk time depended on whether they picked up their gear at one bin or two. Employers could prevent compensability for walk time by placing all of the items at one location instead of at a few locations in close proximity. Consequently, we find that the walking at issue is not exempted from the Portal–to–Portal Act due to it occurring after the doffing has commenced.

Next, we evaluate whether the walking at issue is preliminary or postliminary activity, the type of activity that the Portal–to–Portal Act exempts from compensation. Under the heading of "Activities not Compensable," the Portal–to–Portal Act lists "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and . . . activities which are preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a)(1).

While the Code does not include a description of walking identical to the one before us, it illustrates that Congress did not intend for most types of walking to be compensable. Walking that is considered preliminary or postliminary, and thus non-compensable, includes "walking or riding by an employee between the plant gate and the employee's lathe, workbench or

other actual place of performance of his principal activity or activities." 29 C.F.R. § 790.7(f). The examples of walking that the Code describes as not preliminary or postliminary fit into a narrow category of walking in which the act is part of the actual work activity. For illustration, the Code describes a logger who is carrying heavy equipment on his trip into the woods to the cutting area as walking "while performing active duties," and distinguishes this walking from non-compensable walking in which he would carry "ordinary hand tools." 29 C.F.R. § 790.7(d).

Under the facts of this case, Employees' walking from place to place to gather ordinary safety gear and to punch in their time is more similar to walking while carrying ordinary hand tools; this travel falls outside of the narrow category of walking that is "not segregable from the simultaneous performance of [their] assigned work." 29 C.F.R. § 790.7(d). In addition, the Code states that under normal conditions, "checking in and out and waiting in line to do so, changing clothes, washing up or showering, and waiting in line to receive pay checks" comprise preliminary or postliminary activities. 29 C.F.R. § 790.7(g). Therefore, we find that on these facts the time spent walking to gather gear before punching in, walking to the time clocks, and walking to dispose of gear after punching out falls under the Portal–to–Portal Act as preliminary and postliminary activity.[2]

## B. Waiting Time

■ Employees claim that Barber Foods must compensate them for all the time they spend waiting in line for the required clothing or equipment and to punch in at the time clocks. Like walking time, we find that the statute provides the answer. Working from the assumption that the donning and doffing of required clothing is an integral part of a principal activity, we find that, under these facts, Barber Foods need not compensate Employees for the challenged waiting time.

First, we find that waiting in line to punch in at the time clock is excluded from compensable activity by 29 C.F.R. § 790.8(c) n. 67, which provides that even when changing clothes is adjudged a principal activity, "activities such as checking in and out and waiting in line to do so would not ordinarily be regarded as integral parts of the principal activity or activities." Employees have presented no arguments that would have us depart from this general rule.

Second, we find that, under the facts of this case, waiting in line for the required gear is not compensable. First, when we look at 29 C.F.R. § 790.8, we find that while the Code does not explicitly address the type of waiting time at issue, the Code indicates that a reasonable amount of waiting time is intended to be preliminary or postliminary. By making some activities that are not traditionally thought of as primary activities, such as a logger carrying heavy equipment out to the logging site and a butcher sharpening knives, the Code was compensating workers for activities that are so integral to a principal activity that they cannot be separated from that activity. However, by excluding walking with ordinary equipment and carrying light equipment, the Code indicates that a line must be drawn, otherwise an

2. In their brief, Employees argue that the district court erred in finding that Employees failed to raise in their Complaint or in their Opposition to Summary Judgment a claim that they are entitled to compensation for Employees' activities after punching out on the time clocks. Because we find that it is at least arguable that the issue was raised below, we have addressed it on the merits.

8

almost endless number of activities that precipitate the employees' essential tasks would be compensable. We find that a short amount of time spent waiting in line for uniforms is the type of activity that the Portal–to–Portal Act excludes from compensation as preliminary.[3]

## C. Barber Foods' Cross–Appeal

■ Although Barber Foods ultimately prevailed on all counts, it appeals the district court's finding that the donning and doffing of Employees' required clothing and equipment is an integral part of the Employees' work at Barber Foods. "As a general rule, a party may not appeal from a favorable judgment simply to obtain review of findings it deems erroneous." *Mathias v. Worldcom Techs., Inc.,* 535 U.S. 682, 684, 122 S.Ct. 1780, 152 L.Ed.2d 911 (2002) (per curiam).

If we were to do as Barber Foods asks and reverse the challenged district court finding, our action would provide no tangible relief to Barber Foods; the company has already received all requested relief. *See New York Tel. Co. v. Maltbie,* 291 U.S. 645, 54 S.Ct. 443, 78 L.Ed. 1041 (1934).

## D. Jury Instructions

■ Employees challenge two jury instructions, which "[w]e examine ... to determine whether they adequately explained the law or whether they tended to confuse or mislead the jury on the control-

ling issues." *Federico v. Order of Saint Benedict,* 64 F.3d 1, 4 (1st Cir.1995). We will reverse jury instructions only if the error was prejudicial in light of the entire record. *Id.* at 3. "An erroneous jury instruction necessitates a new trial only if the error could have affected the result of the jury's deliberations." *Allen v. Chance Mfg. Co.,* 873 F.2d 465, 469 (1st Cir.1989).

■ The first challenged jury instruction states the following:

> I instruct you that any time spent walking between the time clock and a bin or locker is not compensable.... It is only the time spent actually putting on or taking off the item and placing it in a bin or locker which you must determine.

After the trial judge gave the instruction, Employees' counsel objected, arguing that the jurors might believe that they are not to compensate an employee if she is walking while donning or doffing.

We find no error in this instruction. When we look at the instructions in their entirety, we find that the jurors were clearly apprized of their duty, and that the instruction would not have confused or misled the jury about the controlling issues.[4]

■ The second challenge is also without foundation. The challenged instruction states

> Now, I instructed you to don an item of clothing, for legal purposes, means to

3. Employees assert, without support, that an employee can spend between two and eight minutes waiting in line at the supply cage to collect equipment, and "several minutes" to get their lab coat and glove liners "sometimes." In addition, Employees contend that "[s]ome rotating associates must wait an additional six or seven minutes at the production area for their supervisor to give the job assignment before they are permitted to punch in." Again, this is a bald assertion.

4. The instruction went on the clarify the jury's duty:

> In deciding how much time it takes an associate to don and doff required clothing and equipment, you are not to decide the actual time it may take any individual employee or associate to perform those activities, rather you must decide the amount of time that you think is reasonably required by a reasonably diligent associate or employee to don and doff the required clothing and equipment.

obtain and put that item on. To doff an item of clothing or equipment for these purposes means to take it off and place it in a bin or locker.

Employees contend that the judge incorrectly defined donning only in terms of clothing and should have included equipment and that the jury could mistakenly conclude that taking an item out of a bin or locker is not compensable.

The trial judge's instruction contained no error. The instruction adequately illuminated the applicable law by stating that donning includes obtaining the item. Consequently, we find that the instruction did not confuse or mislead the jury.

## IV. Conclusion

For the reasons stated above, we **affirm.**