Thomas **DOOLEY**, Individually and on Behalf of all Other Persons Similarly Situated, Plaintiffs

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant**

**No. CIV.A. 01–11029–REK.**

United States District Court, D. Massachusetts.

Feb. 26, 2004.

Howard E. Gottlieb, Orangeburg, NY, for Howard E. Gottlieb, Plaintiff.

Douglas Hart, Shepard, Mullin, Richter & Hampton LLP, Los Angeles, CA, for Liberty Mutual Insurance Company, Defendants.

Todd S. Heyman, Shapiro, Haber & Urmy, LLP, Boston, for Thomas Dooley, Plaintiff.

Andrew C. Pickett, Jackson, Lewis, LLP, Boston, for Liberty Mutual Insurance Company, Defendant.

Frederick Puglisi, Shepard, Mullin, Richter & Hampton LLP, Los Angeles, CA, for Liberty Mutual Insurance Company, Defendant.

Thomas V. Urmy, Jr., Shapiro Haber & Urmy LLP, Boston, for Thomas Dooley, Plaintiff.

Eric J. Winton, Jackson Lewis LLP, Boston.

## Memorandum and Order

KEETON, Senior District Judge.

### I. Pending Matters

Pending for decision are matters related to the following filings:

(1) Joint Stipulation for Entry of Partial Judgment (Docket No. 120, filed December 8, 2003);

(2) Plaintiffs' Motion for Partial Summary Judgment (Docket No. 121) and Memorandum in Support (Docket No. 122), Statement of Undisputed Material Facts (Docket No. 123), and Declarations of Todd S. Heyman (Docket No. 124), Tony Pisano (Docket No. 125), Holly King (Docket No. 126), and Thomas Dooley (Docket No. 127) (filed January 12, 2004), Declaration of Michael Talarico (Docket No. 130, filed January 13, 2004), and Second Declaration of Todd S. Heyman (Docket No. 147, filed February 2, 2004);

(3) Defendant's Opposition to Motion for Partial Summary Judgment (Docket No. 138), Affidavit of Douglas R. Hart in Support (Docket No. 141), and Affidavit of Brian O'Connor in Support (Docket No. 143) (filed January 26, 2004);

(4) Plaintiffs' Memorandum in Reply to Defendant's Opposition to Motion for Partial Summary Judgment (Docket No. 145, filed February 2, 2004);

(5) Defendant's Response to Plaintiffs' Statement of Undisputed Material Facts (Docket No. 139, filed January 26, 2004);

(6) Defendant's Objection to Evidence Presented in Support of Plaintiffs' Motion for Partial Summary Judgment (Docket No. 140, filed January 26, 2004);

(7) Plaintiffs' Response to Defendant's Objections to Evidence Presented in Support of Plaintiffs' Motion for Partial Summary Judgment (Docket No. 146, filed February 2, 2004);

(8) Defendant's Cross–Motion for Partial Summary Judgment (Docket No. 134), Memorandum in Support (Docket No. 135), Statement of Undisputed Material Facts (Docket No. 136), Affidavits of James L. Hunt in Support (Docket Nos. 137 and 142) (filed January 26, 2004);

(9) Plaintiffs' Response to Defendant's Statement of Undisputed Material Facts (Docket No. 148, filed February 2, 2004);

(10) Defendant's Reply to Plaintiffs' Response to Defendant's Statement of Undisputed Material Facts (Docket No. 150, filed February 2, 2004);

(11) Plaintiffs' Motion to Compel the Production of Documents Following In Camera Review (Docket No. 128) and Memorandum in Support (Docket No. 129) (filed January 12, 2004);

(12) Defendant's Opposition to Motion to Compel the Production of Documents (Docket No. 132) and Affidavit of Douglas Hart in Support (Docket No. 133) (filed January 26, 2004); and

(13) Plaintiffs' Reply Memorandum in Support of Motion to Compel (Docket No. 144, filed February 2, 2004).

### II. Procedural and Factual Background

This is a collective action filed under 29 U.S.C. § 216(b), which permits a plaintiff to bring an action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), on behalf of himself and others similarly situated, if all putative plaintiffs file a Notice of Consent with the Court.

The plaintiffs here are auto damage appraisers employed by defendant Liberty Mutual Insurance Company ("Liberty"). They seek unpaid overtime compensation for certain work performed between June 15, 1998 and the present. A number of issues formerly in dispute between the parties have been resolved by the Stipulation (Docket No. 120). The pending mo-

tions address unresolved issues bearing on whether the plaintiffs are to be compensated for their time spent driving to their first duty location, and from their final duty location.

When one of Liberty's customers is involved in an accident, the customer has the option of taking his or her car to a drive-in facility, or having an appraiser come to the customer. The insured arranges a date, time, and location with Liberty's dispatcher. An appraiser is then required to travel to the location selected by the insured to perform the appraisal. Liberty's appraisers, therefore, spend substantial periods of time traveling between job locations, in addition to traveling between home and their first and last appraisals of the day.

The parties agree that appraisers will, at least sometimes, perform certain work at their homes, for which they are compensated if they properly report their work performed. For instance, before traveling to their first appraisal, employees sometimes start their laptop computers, open necessary software, check their voice mail, check their email, respond to messages, set a new voice mail greeting on their phones, review their day's assignments, map out a geographical route for the day, and load their computer, printer, docking station, digital camera, and other supplies into their vehicles. The parties disagree about how often appraisers perform this sort of work at home.

Similarly, the parties agree that, at least sometimes, appraisers perform certain work-related tasks at the end of the day in their homes, for which they are compensated if they report the work. These tasks include checking their email and voice mail; calling Liberty employees, body shops, parts suppliers, insureds, and claimants; completing estimates or appraisals that they were unable to complete in the field; faxing paperwork to Liberty; electronically sending the day's appraisals to Liberty; electronically sending photographs documenting the day's claims to Liberty; electronically completing a time log for the day; and downloading and reviewing assignments for the following day. Again, the parties dispute the extent to which appraisers perform this work at home.

The plaintiffs have filed a motion, designated by them as a motion for partial summary judgment, requesting a ruling of law to the effect that the time they spend driving from their homes to their first appraisal site, and from their final appraisal site back to their homes, are compensable under the FLSA. The defendants have filed a document, designated by them as a cross-motion for partial summary judgment, requesting the opposite ruling.

Also pending is the plaintiffs' Motion to Compel the production of certain documents the defendant generated between 1992 and 1993. These documents relate to advice the defendant received from its attorneys as to whether the appraisers were properly classified as exempt from the overtime compensation requirements of the FLSA.

### III. Disposition of the Pending Matters

#### A. Stipulation

I have reviewed the parties' stipulation contained in Docket No. 120. In this stipulation, the parties have agreed to rulings of law, and purport to have stipulated to partial summary judgment. The use of any term including the word "judgment" in the present context is potentially misleading. The effect of approving the stipulation would not produce a judgment, partial or otherwise. I conclude that this characterization is inaccurate. Rather than approve the stipulation in its current form, I make the requested stipulated rulings of law in the Order below.

## B. Evaluation, on the Current Record, of Plaintiffs' Arguments

The plaintiffs present two arguments as to why their time spent driving to and from home should be considered compensable under the FLSA. First, they argue that the drives occur during the workday, and therefore are compensable. Second, they argue that the travel time is part of the plaintiffs' principal activities.

With respect to the plaintiffs' first argument, I rule, below, that the extent to which the plaintiffs' commute time is compensable under the FLSA turns on whether the plaintiffs' workday commences and ends at home. This, in turn, is a material question in genuine dispute between the parties. The record before me at this time does not warrant a ruling that either party has shown that no genuine dispute of material fact exists. For this reason, summary judgment is not appropriate at this time. I add, however, certain rulings of law. First, I rule that circumstances may exist in which commute time legally must be compensated under the FLSA. Thus, for example, if the plaintiffs prove at trial that their workday begins and ends at home, then they are entitled to compensation for time spent driving to their first appraisal site and from their last site.

With respect to the plaintiffs' second argument, I rule, below, that the plaintiffs' travel to the first appraisal site, and from the last appraisal site, is not a principal activity within the meaning of the Portal–to–Portal Act, 29 U.S.C. § 254, and is therefore not compensable under the FLSA.

In making the rulings explained in this Memorandum, I have relied on plaintiffs' affidavits only to the extent that the affiant made a relevant statement based on his or her personal knowledge. Specifically, I relied only on those portions of the affidavits that outlined what equipment each affiant loads into his or her vehicle at the beginning of the day, and unloads at the end of the day. To the extent the defendant has objected, in Docket No. 140, to these statements, those objections are overruled. Each of the defendant's other objections in Docket No. 140 is moot.

## C. Cross–Motions

### 1. Terminology and Substance

Because the parties are not seeking a final disposition of any part of this case, the terminology of "summary judgment" is not used in explaining the rulings I make in acting on the current cross-motions. Instead I explain in other ways the reasons for the rulings I make and other rulings I decline to make in the disposition of these cross-motions. Cf. Fed.R.Civ.P. 56(d) advisory committee's note (1946) ("[A] partial summary 'judgment' is not a final judgment, and, therefore, is not [generally] appealable. The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case.").

### 2. Standard of Decision

■ Although the parties do not contemplate my making an order for what is truly a judgment of any kind, partial or final, it is appropriate for me to apply the standard set forth in Fed.R.Civ.P. 56(d) to the extent it is relevant. In other words, in these circumstances a court must "if practicable ascertain what material facts exist without substantial controversy and what material facts are in fact and in good faith controverted," and should make an order so specifying. Fed.R.Civ.P. 56(d). Thus, a court may both (i) make legal rulings about materiality of factual assertions that are not properly controverted, and (ii) make legal rulings about factual assertions that are properly shown to be controverted.

A trial court's authority to make legal rulings of these kinds is not limited, of course, to genuine summary judgment proceedings. It exists in many other circumstances, including those presented by the current cross-motions.

The rulings that the parties have requested in the current motions are interlocutory and are not appealable.

### 3. The Fair Labor Standards Act and the Portal–To–Portal Act

Under the Fair Labor Standards Act, employers must pay employees covered by the Act at least a minimum wage for all hours worked. 29 U.S.C. § 206(a); *see also Andrews v. DuBois,* 888 F.Supp. 213, 216 (D.Mass.1995). Employers must pay covered employees at one and a half times their regular pay for any hours worked beyond 40 hours per week. 29 U.S.C. § 207(a); *see also DuBois,* 888 F.Supp. at 216.

The Portal–to–Portal Act, 29 U.S.C. § 254(a), modifies the FLSA by providing that, in general,

no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended . . ., on account of the failure of such employer to . . . pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947 -

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

*Id.* Deciding whether a given activity constitutes a "principal activity" within the meaning of the Portal–to–Portal Act is something a court may do in the manner and by procedures appropriate to deciding matters of law. *Ballou v. General Elec. Co.,* 433 F.2d 109, 111 (1st Cir.1970), *cert. denied,* 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971). In the present circumstances, for example, this is true as to asserted facts concerning the activities of at least some of the plaintiffs that are not in genuine dispute.

Three steps are required to decide whether the plaintiffs' activities fall within the terms of the Portal–to–Portal Act, rendering them non-compensable under the FLSA. First, I must determine whether the claimed activity is a "principal activity." If not, I must determine whether, under the final clause quoted above, the activity occurs after the worker has started performance of his or her principal activities, and before the worker has completed those activities. If the work is, in fact, outside the workday, the Portal–to–Portal Act does not make the work non-compensable, unless the work consists of travel to or from the primary activities, or consists solely of work preliminary to or after completion of the worker's primary activities.

The plaintiffs, in their arguments, focus on two discrete forms of work: (i) their work at home at the beginning and end of the day, and (ii) their work transporting their equipment to and from home.

### 4. Plaintiffs' Activities at Home

It is undisputed that at least some of the plaintiffs perform work-related activities at the beginning of the day at home before driving to their first appraisal site, and again at the end of the day after returning

from their final appraisal. Do the plaintiffs' alleged activities at home constitute principal activities? In deciding how to answer this question, I focus only on those plaintiffs who, beyond genuine dispute, work at home at the beginning and end of the day.

■ The statute itself provides no guidance as to what activities fall into the "principal activity" category. The Department of Labor has published administrative interpretations that, though not binding on courts, are entitled to deference if they appear reasonable and persuasive. *See O'Brien v. Town of Agawam,* 350 F.3d 279, 298 (1st Cir.2003); *see also Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944) (the interpretations "have the power to persuade, if lacking power to control, as they constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance").

In 29 C.F.R. § 790.8, the Department of Labor makes it clear that

in order for an activity to be a "principal" activity, it need not be predominant in some way over all other activities engaged in by the employee in performing his job; rather, an employee may, for purposes of the Portal–to–Portal Act be engaged in several "principal" activities during the workday. The "principal" activities referred to in the statute are activities which the employee is "employed to perform"; they do not include noncompensable "walking, riding, or traveling" of the type referred to in section 4 of the act [9 U.S.C. § 254(a)(1) ] . . . . The legislative history further indicates that Congress intended the words "principal activities" to be construed liberally . . . to include any work of consequence performed for an employer, no matter when the work is performed. A majority member of the committee which introduced this lan-

guage into the bill explained to the Senate that it was considered "sufficiently broad to embrace within its terms such activities as are indispensable to the performance of productive work."

*Id.* § 790.8(a) (footnotes omitted). Acting under the authority of this guidance, I conclude that the "term 'principal activities' includes all activities which are an integral part of a principal activity." *See id.* § 790.8(b).

■ Furthermore, under the case law, the term "principal activities" is to be construed broadly. *See Barrentine v. Arkansas–Best Freight Sys., Inc.,* 750 F.2d 47, 50 (8th Cir.1984); *Dunlop v. City Elec., Inc.,* 527 F.2d 394, 398 (5th Cir.1976); *Bobo v. United States,* 37 Fed. Cl. 690, 694–95 (1997), *aff'd,* 136 F.3d 1465 (Fed. Cir.1998). Whether a particular function is a principal activity may be determined by deciding whether the task is "performed as part of the regular work of the employees in the ordinary course of business." *Dunlop,* 527 F.2d 394, 401 (5th Cir.1976).

■ Under this rubric, I conclude that the activities the plaintiffs allege they perform at home constitute principal activities. Appraisers are required, as part of their job duties, to check their email and voice mail, to prepare their computers for use, and to return telephone calls. These tasks are "part of the regular work of the employees." *Dunlop,* 527 F.2d at 401. Applying, as applicable law requires, a broad definition of the term, I rule that these activities constitute "principal activities" within the meaning of the Portal–to–Portal Act.

■ Next, I must determine whether my conclusion that the plaintiffs' activities at home commence the workday. If they do, then the plaintiffs' drive from home to the next work site occurs within the work-

day. The Portal–to–Portal Act applies only to those activities that occur "either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 29 U.S.C. § 254(a). I concluded, above, that the plaintiffs' alleged activities at home constitute principal activities. Because the plaintiffs' drive to the first appraisal site does not occur "prior to the time [the] employee commences [his or her] principal activity or activities," the drive is outside the ambit of the Portal–to–Portal Act. The default rule of the FLSA—that the plaintiffs must be paid—applies. *See* 29 C.F.R. § 790.6(a) ("Periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked to the same extent as would be required if the Portal Act had not been enacted."). Because the Portal–to–Portal Act is inapplicable, I need not decide whether the plaintiffs' drive falls within § 254(a)(1) (excluding compensation for travel outside the workday).

Defendant's heavy reliance on *Andrews* is misplaced. The plaintiffs in *Andrews* were correctional officers at the Massachusetts Department of Correction. 888 F.Supp. at 215. As part of their responsibilities, the employees kept one or more dogs at their homes, and were responsible for cleaning, grooming, feeding, exercising, and training the dogs. *Id.* The officers were responsible for transporting the dogs, either in their personal vehicles or in state-supplied vehicles. *Id.* The plaintiffs claimed that they were owed compensation both for the time they spent taking care of the dogs at home and for the time they spent transporting the dogs. Judge Young held that the plaintiffs were entitled to compensation for taking care of the

dogs, *id.* at 216–17, but not for transporting them, *id.* at 217–20.

But *Andrews* is distinguishable. No argument was presented in *Andrews* asserting that the transportation time should be included because the workday had begun. Nor would such an argument have made sense, since caring for police dogs is a 24–hour activity. Beyond genuine dispute, Congress clearly did not manifest an intent for a workday to span a 24–hour period. Thus, the suggested argument was simply inapplicable in *Andrews*. Instead, ruling that the transportation was not compensable, *Andrews* rejected not this but instead other arguments. *Andrews* held (i) that, in the circumstances of that case, it did not make sense to treat the home as an alternative work site, *id.* at 218; (ii) that the transportation of the dogs was not a service that directly benefitted the employer, *id.*; and (iii) that dogs were not analogous to heavy machinery, and therefore did not fall within 29 C.F.R. § 790.7(d) (excluding from 29 U.S.C. § 254(a)(1) employees who transport heavy equipment). None of these rulings is relevant in determining whether the appraisers in this case begin their workday at home.

A recent First Circuit opinion also involves related facts; but it, too, is distinguishable. In *Tum v. Barber Foods, Inc.,* 331 F.3d 1 (2003), the plaintiffs were workers at a poultry processing plant. *Id.* at 3. Employees were paid starting at the time they punched in to a computerized timekeeping system. *Id.* Before they were permitted to punch in, however, employees were required to don an extensive array of outerwear, such as lab coats, hairnets, earplugs, safety glasses, steel-toed boots, bump hats, and back belts, and were required to carry certain equipment. *Id.* Clothing and equipment for the employees to pick up were located in various locations on the production floor, requiring employ-

ees to walk between the locations to retrieve their required outerwear. *Id.* at 3–4.

The First Circuit conceded that the donning of clothes and equipment could constitute a primary activity. Nevertheless, it held that the time employees spent walking from one location to another, collecting outerwear, was not compensable. The court reasoned:

As described in 29 C.F.R. § 790.7(g) n. 49, walking time is not automatically excluded from the purview of the Portal–to–Portal Act by virtue of following compensable doffing. By stretching the traditional understanding of a primary activity to cover donning and doffing in very limited circumstances, Congress was not creating an avenue to circumvent the Portal–to–Portal Act's exemption of preliminary or postliminary activities. In the case before us, Employees concede that the walk to the first place where gear is gathered is exempted by the Portal–to–Portal Act. *See* 29 C.F.R. § 790.7. Following this logic, if Barber Foods were to dispense all of the gear from one point, then it could eliminate Employees['] claim for walk time between dispensing areas. It would be nonsensical for us to conclude that the compensability of walk time depended on whether they picked up their gear at one bin or two. Employers could prevent compensability for walk time by placing all of the items at one location instead of at a few locations in close proximity. Consequently, we find that the walking at issue is not exempted from the Portal–to–Portal Act due to it occurring after the doffing has commenced.

*Id.* at 6. Thus, because it was "nonsensical" to distinguish between the situation where clothing could be retrieved in a single location and the situation where clothing was retrieved in multiple locations, the First Circuit held that the walking time was not compensable.

No such circumstances exist here. In the circumstances of this case, neither the appraisers nor Liberty can realistically eliminate the necessity to travel. No reason exists to depart from the general rule set forth in the statute that, once the workday begins, workers' time must be compensated under the FLSA until the end of the workday. *See Alvarez v. IBP, Inc.,* 339 F.3d 894 (9th Cir.2003) (distinguishing *Tum* on its facts, and noting that "[t]here is nothing in the statute or regulations that would lead to the conclusion that a workday may be commenced, then stopped . . ., then recommenced . . .").

The defendant argues that 29 C.F.R. § 785.35 provides that commute time is not compensable. But the text of § 785.35, properly read, does not assist the defendant. The administrative interpretation states:

An employee who travels from home *before his regular workday* and returns to his home *at the end of the workday* is engaged in ordinary home to work travel which is a normal incident of employment. . . . *Normal* travel from home to work is not worktime.

*Id.* (emphasis added). By contrast, the plaintiffs contend, and I have ruled, above, that the appraisers travel from home *after* the workday has begun, and that the workday does not end until well after they have returned home. The plaintiffs' situation is simply not encompassed by the administrative interpretation. *Cf.* 29 C.F.R. § 790.6 (periods within the workday unaffected by Portal–to–Portal Act).

At oral argument, the defendant maintained that the purpose of the Portal–to–Portal Act is to limit the amount of commute time for which employers are liable; the defendant asserts that it does not expand employers' liability. But the plain-

tiffs do not argue that the Act expands employers' liability. Instead, they say merely that it does not apply in this situation, and that the base provisions of the FLSA are controlling. Moreover, they say that the FLSA, as a remedial statute, should be interpreted broadly, and exemptions from it are to be construed narrowly. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960). Also, as explained earlier, the term "principal activity," as used in the Act, is to be construed broadly—thereby excluding a greater number of situations from the Act's ambit. I rule that to include the plaintiffs' driving time does not contravene the manifested intent of the Portal–to–Portal Act.

The defendant also contended at oral argument that I should "interpret the Portal–to–Portal Act to give effect to the purposes behind the legislation." *Aguilar v. United States*, 36 Fed. Cl. 560, 565 (1996). Contrary to my ruling above, the *Aguilar* court concluded that the term "principal activities" should be narrowly construed to effectuate congressional intent. *Id.* But the *Aguilar* decision has been repudiated in its own jurisdiction. *Bobo*, 37 Fed. Cl. at 695 (stating that "*Aguilar* interprets the FLSA too restrictively and the Portal Act too broadly"), *aff'd*, 136 F.3d at 1468 n. 1 ("We decline to adopt [the *Aguilar*] interpretation" of the Portal–to–Portal Act.). The defendant has identified no case law controlling in any jurisdiction to support its contention that the term "principal activity" in the Portal–to–Portal Act should be read narrowly.

■ The conclusion that the plaintiffs are entitled to compensation comports with common sense. Unlike the plaintiffs in *Andrews*, who could not be said to have started their workday at home, the plaintiffs here perform substantial administrative work at home. Their office is their home. The first and last trip of the day

for these appraisers is not a commute in the ordinary sense of the word—it is a trip between their office, where their administrative work is performed, and an off-site location. Travel between an office and an off-site location is compensable time. *See Baker v. Barnard Const. Co.*, 146 F.3d 1214, 1216 (10th Cir.1998) (hereinafter *Baker*). In these circumstances, it would make little sense to fail to compensate the employees for this travel time.

### 5. Plaintiffs' Driving Activity

■ I ruled, above, that those plaintiffs who perform work at home at the beginning and end of the day must be compensated for their first and last drive of the day. The defendant asserts, however, that some of the plaintiffs do not perform work at home. Whether this is true is in dispute between the parties. But the plaintiffs assert that the dispute is not material, because, plaintiffs say, even if some plaintiffs do not work at home, the time spent driving is itself compensable under the FLSA. I rule, however, that if a plaintiff does not perform work at home then the first and last drive of the day fall within the ambit of the Portal–to–Portal Act and are not compensable.

As before, first, I analyze whether the driving is a principal activity. Generally, travel to and from home is not a principal activity. *See* 29 C.F.R. § 790.8(a) (principal activities "do not include noncompensable 'walking, riding, or traveling' of the type referred to in section 4 of the act [29 U.S.C. § 254(a)(1)]"). The plaintiffs argue that transporting their equipment to appraisal sites is "integral and indispensable to the performance of [the appraisers'] principal activities." Docket No. 122 at 22. They cite numerous cases holding that transportation of equipment is a principal activity and is compensable. *See, e.g., Preston v. Settle Down Enterprises,*

*Inc.,* 90 F.Supp.2d 1267, 1280 (N.D.Ga. 2000).

At oral argument, the defendant, citing *Aguilar v. United States,* 36 Fed. Cl. 560 (1996), asserted that the "integral and indispensable" test does not apply to commutes (29 U.S.C. § 254(a)(1)), but rather only to "preliminary and postliminary activities" (29 U.S.C. § 254(a)(2)). *Aguilar* does support this proposition. *See id.* at 565 ("'[I]ntegral and indispensable' activities [are] compensable even if performed 'before or after the regular work shift' *unless* [sic, should be *only if*] those activities 'are not specifically excluded by Section 4(a)(1) [29 U.S.C. § 254(a)(1)].'") (quoting *Steiner v. Mitchell,* 350 U.S. 247, 256, 76 S.Ct. 330, 335, 100 L.Ed. 267 (1956) (emphasis in original)). Although, as noted above, *Aguilar* has been repudiated, the Supreme Court case upon which it relies, *Steiner,* has not.

I conclude that the "integral and indispensable" exception applies to both subsections of § 254(a). Except in the one phrase quoted above, nowhere in the *Steiner* opinion does the Court discuss § 254(a)(1). An interpretation of *Steiner* to mean that *all* commutes are exempted from the "integral and indispensable" test would conflict with numerous Department of Labor interpretations. *See* 5 C.F.R. §§ 551.422(a)(2), 551.401, 550.112(g); *see also* 29 C.F.R. §§ 785.41, 790.7(d), 790.7(d) n.47; *Bobo,* 37 Fed. Cl. at 695 n. 7. Instead, I adopt *Bobo*'s reading that *Steiner* stands

> for the proposition that section 254(a)(1) of the Portal Act precludes compensation for normal commuting time. The DOL regulations are consistent with *Steiner* because they interpret Portal Act section 254(a)(1) to remove normal commuting time from FLSA compensation requirements. These DOL regulations also provide that employee commutes entailing substantial work differ from normal commutes. In short, the regulations take a common-sense approach and teach that section 254(a)(1) of the Portal Act deems normal commuting time noncompensable and therefore is inapplicable to commutes during which employees perform work for their employers.

37 Fed.Cl. at 695 n. 7 (citations omitted); *cf.* 29 C.F.R. § 785.35 ("*[n]ormal* travel" between home and work falls within the Portal–to–Portal Act and is not compensable) (emphasis added). Because the two subsections of § 254(a) express a single concept—that "preliminary" and "postliminary" activities are not compensable, including *ordinary* commutes—I rule that the "integral and indispensable" test applies to both subsections.

Remaining is this question: Is transporting the equipment "integral" to the appraisers' work? The case law holds that, as a general rule, commuting is not a principal activity, even if the employee is also transporting equipment for the employer's benefit. The line of canine handler cases, all but one of which hold that a police officer who transports a canine to and from work at the behest of the police department is not engaging in compensable activity, provide good examples. *See Aiken v. City of Memphis,* 190 F.3d 753, 757 (6th Cir.1999); *Bobo v. United States,* 136 F.3d 1465, 1468 (Fed.Cir.1998); *Reich v. New York City Transit Auth.,* 45 F.3d 646, 649 & 651–52 (2d Cir.1995); *Bolick v. Brevard,* 937 F.Supp. 1560, 1565 (M.D.Fla. 1996); *DuBois,* 888 F.Supp. at 215, 218; *Levering v. District of Columbia,* 869 F.Supp. 24, 28–29 (D.D.C.1994); *Truslow v. Spotsylvania County Sheriff,* 783 F.Supp. 274, 278 n. 5 (E.D.Va.1992); *but see Graham v. Chicago,* 828 F.Supp. 576 (N.D.Ill.1993). Courts reach this result even while applying the "integral and indispensable" test. *See, e.g., Bobo,* 37 Fed. Cl. at 695. Some of these cases rest on

the conclusion that employees would have to commute, whether or not they were also transporting equipment, see, e.g., DuBois, 888 F.Supp. at 218, or on the premise that simply commuting in a vehicle carrying equipment does not constitute work, see, e.g., Reich, 45 F.3d at 651–52.

The plaintiffs' reliance on Secretary of Labor v. Field, 495 F.2d 749 (1st Cir.1974), is unavailing. The question the court faced in Field was whether a drive from one business location to another was compensable under the FLSA. The court held that it was. Id. at 751. But Field did not consider, as I must here, whether a commute between a home and a business location is compensable under the FLSA. Cf. DuBois, 888 F.Supp. at 218 (commutes are not compensable because employees should not be paid for travel required independent of employer policies).

 The proposition that a drive may be compensable (because the employee is transporting equipment for the benefit of the employer) where the drive starts at a business location, but not compensable if the drive starts at an employee's home, is borne out by the factors courts look to when deciding if a given task constitutes a "principal activity."

> The more the preliminary (or postliminary) activity is undertaken for the employer's benefit, the more indispensable it is to the primary goal of the employee's work, and the less choice the employee has in the matter, the more likely such work will be found to be compensable. Commuting and similar activities are generally not compensable. The ability of the employer to maintain records of such time expended is a factor. And, where the compensable preliminary work is truly minimal, it is the policy of the law to disregard it.

Reich v. New York City Transit Auth., 45 F.3d 646, 650 (2d Cir.1995). Transporting equipment evokes many of the factors articulated in Reich, in favor of a finding that the activity is principally work-related. Commuting, however, adds a significant factor on the opposite side of the equation, favoring a conclusion that the same activity is not work-related.

 I conclude that the transportation of light equipment from employees' homes to work, and back from work to home, does not constitute a principal activity. First, the manifested intent of Congress favors the defendant. By enacting the Portal–to–Portal Act, Congress manifested an intent to immunize employers from liability for ordinary commutes. See Reich, 45 F.3d at 651. A hallmark of an ordinary commute is that it does not involve work beyond that necessary for transportation. See id.; cf. Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944) (defining work as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business"). Although transporting heavy equipment might constitute work, any effort involved in transporting light equipment is likely to be treated as de minimus. The equipment the appraisers must carry is light and fits into a large briefcase. It is not reasonable to infer that Congress manifested an intent that transporting light equipment transforms an ordinary commute into a principal work activity. Indeed, this approach would lead to surprising results. For example, under the reasoning the plaintiffs propose, a police officer who is required to carry a gun must be compensated for his or her commute, since the officer is also transporting necessary equipment. This is not consistent with the intent manifested by Congress. See Levering, 869 F.Supp. at 28.

Second, the administrative interpretations support this result. In 29 C.F.R. § 790.7(d), the Department of Labor characterized an employee who travels with "a portable power saw or other heavy equipment" as performing active duties, as contrasted with an employee who carries "ordinary hand tools." *Id.; see also Tum*, 331 F.3d at 7 ("[W]alking while carrying ordinary hand tools... falls outside of the narrow category of walking that is not segregable from the simultaneous performance of [their] assigned work" and is not compensable) (citations and quotation marks omitted). I find the distinction between carrying heavy equipment and transporting hand tools persuasive.

Third, the statute itself may foreclose the possibility that the commuting time be considered a principal activity for some, if not all, of the plaintiffs. The Employee Commuting Flexibility Act, Pub L. No. 104–188 § 2102, 110 Stat.1928 (codified at 29 U.S.C. § 254(a)), amended the Portal-to–Portal Act by providing:

> For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

*Id.* The record before this court at this time suggests that at least some of the plaintiffs may drive vehicles owned by Liberty, although no evidence has been placed before the court regarding the existence or nonexistence of an agreement regarding the use of a vehicle. Because the parties have not briefed the applicability of this provision, I do not rest my ruling on it.

The plaintiffs cite a host of other cases in which, they assert, courts have held that transporting equipment constitutes a primary activity. *See Baker*, 146 F.3d at 1219; *Herman v. Rich Kramer Constr., Inc.*, No. 97–4308WMS, 1998 WL 664622 (8th Cir. September 21, 1998); *Crenshaw v. Quarles Drilling Corp.*, 798 F.2d 1345, 1350 (10th Cir.1986); *Chao v. Virginia Dep't of Transp.*, 157 F.Supp.2d 681, 689 (E.D.Va.2001), *rev'd on other grounds*, 291 F.3d 276 (4th Cir.2002); *Preston v. Settle Down Enterprises, Inc.*, 90 F.Supp.2d 1267, 1280 (N.D.Ga.2000) (employee performs compensable work while traveling if he or she is also "transporting equipment without which the employee's job could not be done"); *Breen v. Concrete By Wagner, Inc.*, No. 98 C 3611, 1999 WL 1016267 (N.D.Ill. Nov. 4, 1999); *Graham v. City of Chicago*, 828 F.Supp. 576, 582 (N.D.Ill. 1993); *Dole v. Enduro Plumbing, Inc.*, No. 88–7041–RMT, 1990 WL 252270, at *6 (C.D.Cal. Oct.16, 1990).

But these cases are distinguishable on their facts. As *Reich* noted, a multitude of factors must be weighed when deciding whether a given activity is a principal activity. In the cases the plaintiffs cite, either travel was from an intermediate site (and, hence, no home-to-work commute was involved) (*Dole, Breen, Preston*) or the act of driving equipment itself constituted substantial work, either because of additional responsibilities or the extensive nature of the equipment being transported (*Baker, Herman, Crenshaw*), or are too unclear as to the facts to constitute useful precedents here (*Chao*). *Graham* remains, but it is contradicted by extensive case law reaching the opposite conclusion. To the extent that some of these cases state broadly that travel time is compensable if employees are transporting equip-

ment without which their jobs could not be done, *e.g., Crenshaw,* 798 F.2d at 1350, I read these statements as implying that the transportation involves some degree of effort. Otherwise, as observed earlier, the commutes of police officers who carry guns, or indeed, employees who carry badges, would always be compensable.

Here, because the employees are driving from their homes, and because the equipment they transport is relatively light, *see* Plaintiffs' Statement of Undisputed Material Facts (Docket No. 123) at ¶ 46, I rule that their commutes do not constitute a primary activity.

In summary, I rule that those employees who cannot show they perform work at home before and after their daily appraisals are not entitled to be compensated for their commute times. Those employees who can show that they work at home at the beginning of the day but not the end of the day are entitled to compensation for their morning commutes, and those who can show work at home at the end of the day are entitled to compensation for their evening commutes.

### D. Motion to Compel

#### 1. Introduction

██ The plaintiffs also move for an order compelling the production of certain documents produced by Liberty's attorneys in the early 1990s, including the attorneys' work files (the "1992–93 documents"). The parties appear to agree that, in their settlement agreement, Liberty has waived any objection to the production of these documents on any grounds other than relevance in their settlement agreement. The agreement provides, in part:

> Liberty Mutual agrees to produce the documents that were the subject of the Court's June 13, 2003 Order for an *in camera* inspection by the Court for the purpose of determining whether such documents are relevant to any issue that

then remains to be determined by the Court. If the Court determines that any of such documents are relevant to any such remaining issue, Liberty Mutual will produce such documents to the Plaintiffs forthwith.

Agreement of Partial Settlement (Ex. C to Docket No. 129) at ¶ 19. I assume for the purposes of this Memorandum and Order, but do not decide, that assertions of privilege are unavailable to Liberty at this stage of these proceedings. The only question before me is whether the 1992–93 documents are relevant to any of the matters remaining in this case.

The plaintiffs present two arguments supporting their proposed conclusion that the documents are relevant. First, they argue that the documents relate to Liberty's state of mind when it hired plaintiffs. Liberty's state of mind, the plaintiffs contend, is relevant to determining the appropriate method of calculating the rate of overtime payments. Second, they argue that the documents may contain information about the number of hours worked in the early 1990s. This information, the plaintiffs contend, is probative of the number of hours appraisers worked between 1993 and 2002, during which time Liberty maintained no direct records of appraisers' hours. For the reasons explained below, I reject the plaintiffs' first argument. I conclude, however, that if no objection other than relevance applies, then the documents are discoverable if they contain information relating to the number of hours appraisers worked in the early 1990s.

#### 2. Rate of Overtime Pay

██ One of the issues remaining in this case is how to calculate the appraisers' hourly rate for the purposes of awarding them overtime. The plaintiffs assert that the appropriate calculation would be to divide the appraisers' weekly salary by a

40–hour workweek to obtain their hourly wage, then award them time and a half for any hours worked above 40 hours. For instance, if the appraisers earned $800 in a week, their hourly salary would be $20. If they worked a 60–hour workweek, they would be entitled to $30 per overtime hour for each of the 20 hours of overtime they worked in that week, for a total of $600 in overtime, in addition to their $800 base pay.

Liberty, however, says it will claim the benefit of a fluctuating workweek. Under this method of calculation, employees' hourly rates are considered to fluctuate every week depending on the number of hours in fact worked. In the above example, in a week in which employees with a base salary of $800/week work 60 hours, their hourly rate would be calculated by dividing $800 by 60 hours, arriving at an hourly rate of $13.33. They would be entitled to an overtime payment of $400, or $13.33 times 1.5 times 20 hours overtime, in addition to the $800 base pay. Under the fluctuating workweek calculation, the more hours employees work, the lower their hourly rate.

The statutory and regulatory provisions relating to the fluctuating workweek are as follows. The FLSA provides, in general, that

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods in commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The phrase "the regular rate at which [the employee] is employed" is ambiguous in the situation where employees regularly work irregular hours for a fixed weekly wage. *Valerio v. Putnam Assocs.*, 173 F.3d 35, 39 (1st Cir. 1999). In this situation, the Supreme Court has interpreted the statute to provide for a fluctuating hourly rate, as described above. *See Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 579–80, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942) ("Overnight Motor"). The Court's interpretation, as applicable here, is reflected in 29 C.F.R. § 778.114(a).

In order for the fluctuating workweek to apply, the administrative interpretation specifies that a "clear mutual understanding of the parties that the fixed salary is compensation ... for the hours worked each workweek, whatever their number" must exist. 29 C.F.R. § 778.114(a). This prerequisite has been uniformly adopted by the case law. *See, e.g., O'Brien v. Town of Agawam*, 350 F.3d 279, 290 (1st Cir.2003).

The plaintiffs set forth what they admit to be a novel legal theory regarding the proper interpretation of the "clear mutual understanding" requirement. They assert that, when they were hired, Liberty told them that the FLSA did not entitle them to payment for overtime worked. The plaintiffs contend that the 1992–93 documents will demonstrate that this representation was made in bad faith because Liberty knew, based on the advice of its attorneys, that the appraisers *were* entitled to overtime. The plaintiffs argue that no "clear mutual understanding" that Liberty would pay the plaintiffs a weekly salary that would cover a fluctuating workweek is possible—even if the employee understood this to be the employment arrangement—because the employer's bad faith negates the mutuality of any understanding. In sum, they argue that even if the employee understood that he or she was to be paid a fixed salary, the *employ-*

*er* did not share that understanding, due to its alleged knowledge of the FLSA's requirements. *Cf.* Restatement (Second) of Contracts § 164(1) (1981) ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient.").

The plaintiffs' argument proceeds by analogy to contract law. They cite cases that find the requisite mutual understanding by inferring an agreement from the conduct of the parties. The plaintiffs aver that, if an agreement is required, then fraud in the inducement should vitiate the agreement, voiding the "clear mutual understanding." The plaintiffs draw support for their argument from a line of FLSA cases that infer an "implied-in-fact" agreement regarding whether an employee was to be paid on an hourly basis from the conduct of the parties. *See Valerio,* 173 F.3d at 39–40; *Mayhew v. Wells,* 125 F.3d 216, 218 (4th Cir.1997); *Zoltek v. Safelite Glass Corp.,* 884 F.Supp. 283, 286–87 (N.D.Ill.1995). The plaintiffs assert that these cases demonstrate that courts turn to common-law principles of contract interpretation to decide whether a "clear mutual understanding" exists. At oral argument, the plaintiffs conceded that they did not contend that contract law applies of its own force, merely that courts should import applicable concepts.

The precedents, however, are distinguishable. In *Mayhew,* and *Zoltek,* contract law *did* apply of its own force. In those cases, the courts looked to the conduct of the employer and employee as evidence of the terms of the employment contract. Both courts concluded that the conduct of the parties indicated that the implied contract of employment provided that the employee was to receive a fixed salary no matter how many hours in a given week the employee in fact worked.

*Mayhew,* 125 F.3d at 219–20; *Zoltek,* 884 F.Supp. at 286. The courts found that this implied employment agreement satisfied the "clear mutual understanding" requirement of the case law and 29 C.F.R. § 778.114(a). *Id.* The court's citation in *Valerio* indicate that there, too, the court looked to the implied employment contract to find the requisite clear, mutual understanding. *Valerio,* 173 F.3d at 39–40.

For this case law to be applicable, the plaintiffs would be required to show that their entire employment agreement is voidable due to Liberty's alleged misrepresentations. Under the approach of *Mayhew, Zoltek,* and *Valerio,* the clear, mutual understanding that the appraisers are to receive a fixed salary no matter how many hours a week they work is derived from the employment agreement; it follows that the clear, mutual understanding is voidable only if the underlying employment agreement is. I do not understand the plaintiffs to be seeking this result. And some doubt exists as to whether they would be entitled to seek this result under their present pleadings. *See* Fed.R.Civ.P. 9(b).

Even if the contract were voidable, a court still could find a clear, mutual understanding. Although the cases permit reference to employment contracts to find this understanding, they do not require this approach. Indeed, an "understanding" is not the same thing as a "contract." An understanding is certainly required for a contract—but the reverse is not true. Parties may reach an understanding, for example, without the payment of consideration. Understandings that are not contracts are not enforceable on their own terms, despite the fact that they may, as here, have legal significance.

Plaintiffs ask, then, that I hold that a mere *understanding* is voidable when procured by fraud or misrepresentation. I conclude that such a course would be ill-

advised. I start with the fundamental purpose of the FLSA: to protect the general well-being of workers. *See* 29 U.S.C. § 202 (statement of Congressional purpose). The fluctuating workweek rule derives from the Supreme Court's interpretation of the FLSA's language regarding the "regular rate of pay" where employees receive a fixed weekly salary. *See Overnight Motor*, 316 U.S. at 579–80, 62 S.Ct. 1216. The "clear mutual understanding" requirement ensures that the parties, in fact, agreed to a weekly salary as opposed to an hourly rate of pay. *See* 29 C.F.R. § 778.114(a). None of these doctrines exists to remedy fraud or misrepresentation on the part of the employer. Other provisions of the FLSA, as well as common-law tort and contract remedies, are readily available to employees who are wronged by employer misrepresentations. The fluctuating workweek doctrine is not a benefit to be withheld as a punitive measure, but rather is an interpretive tool to give effect to the understanding of the parties.

In conclusion, I rule that the record now before me supports an inference that the employment agreement between Liberty and the appraisers provided that the appraisers would receive a fixed weekly salary, not an hourly salary. No suggestion is before me that the entire employment agreement is voidable. Even without reference to the employment agreement, I rule that a clear, mutual understanding existed between the parties that the appraisers would receive a fixed weekly salary. In these circumstances, I rule that the 1992–93 documents, to the extent they relate to Liberty's knowledge of the FLSA's requirements, are not relevant to any outstanding matter in this case.

Because I concluded, however, that the 1992–93 documents are discoverable to the extent they contain information probative of the hours appraisers worked during the time period covered by those documents, the Order below requires Liberty to produce those documents that contain such information, unless Liberty can show that objections in writing have been preserved. If further disputes arise, the parties may bring them to my attention by an appropriate motion.

## ORDER

For the foregoing reasons, it is ORDERED:

(1) As explained in Part III.A of the foregoing Memorandum, the Joint Stipulation for Entry of Partial Judgment (Docket No. 120) is ALLOWED to the following extent:

(a) Defendant is liable for and shall pay to each of the plaintiffs an amount equal to two times the amount of any single damages that may hereafter be stipulated by the parties or, absent any such stipulation, be found by the court to be owed to the plaintiffs as unpaid overtime compensation for their services as Liberty Mutual Auto Damage Appraisers during the periods described in paragraph 2, below. Plaintiffs waive any claim to prejudgment interest and agree not to seek such interest in this action.

(b) For purposes of the Statute of Limitations set forth in 29 U.S.C. 255(a), in determining the number of hours on account of which any such single damages may be owed to any plaintiff, the court will base its findings upon the number of unpaid hours over 40—if any and for which overtime has not been paid—worked by such plaintiff in any week during the period beginning on the date three years before the date on which such plaintiff's Notice of Consent form was filed with the court. In the case of the named plaintiff, Thomas Dooley, the period relevant to computing damages begins on June 15, 1998.

(c) Liberty Mutual reserves the right to argue application of the fluctuating workweek method of computing overtime compensation and make any other arguments regarding what constitutes compensable hours worked, including the argument that "commuting time" to the first appointment from home and from the last appointment home is non-compensable.

(d) In addition to any amounts paid to the plaintiffs as damages, defendant is liable for and shall pay to the plaintiffs' counsel pursuant to 29 U.S.C. 216(b) such amounts of attorneys' fees and expenses as may hereafter be agreed by stipulation of the parties approved by the court, or, absent such agreement, as may be awarded by the court.

(2) As explained in Part III.B of the foregoing Memorandum, Defendant's Objection to Evidence Presented in Support of Plaintiffs' Motion for Partial Summary Judgment (Docket No. 140) is OVERRULED in part and is MOOT in part;

(3) As explained in Part III.C of the foregoing Memorandum, Plaintiffs' Motion for Partial Summary Judgment (Docket No. 121) is ALLOWED in part and DENIED in part;

(4) As explained in Part III.C of the foregoing Memorandum, Defendant's Cross–Motion for Partial Summary Judgment (Docket No. 134) is ALLOWED in part and DENIED in part; and

(5) As explained in Part III.D of the foregoing Memorandum, Plaintiffs' Motion to Compel the Production of Documents Following In Camera Review (Docket No. 128) is ALLOWED in part and DENIED in part.